UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

**CIVIL ACTION NO. 2007-73**

**NED MEADE**
                                                                        **PLAINTIFF**

**VS.**
                            **OPINION AND ORDER**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                    **DEFENDANT**

      This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 7) and the cross-motion for summary judgment of the defendant (Doc. 10).

      In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298, 300(6th Cir. 2001)(<u>citing Buxton v. Halter</u>, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

      In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past

2

relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, the claimant was forty-six years old and had a high school education. He has prior relevant work as a laborer in the coal mining industry and as a roofing/construction laborer.

Over the years, the claimant has filed numerous applications for disability benefits. He elected not to appeal the ALJ's decision dated March 14, 2003, and, instead, on August 20, 2003, he filed his current application. Although the claimant did not request that the Commissioner reopen his prior application, the ALJ considered claimant's condition from January 30, 2002, the date the plaintiff alleges he became disabled.

The plaintiff alleges he became disabled on January 30, 2002, due to back, leg and knee pain, poor hearing, shortness of breath, and nervousness. The claimant has complained of unremitting chronic pain and limitations since sustaining a work-related injury on January 30, 2002. The prior record demonstrates that the claimant has had similar complaints as early as 1995. Diagnostic testing resulted in the claimant being diagnosed with probable chondromalacia patellae of the left knee,

3

probable joint separation of the left shoulder, and non-specific neck and thoracic back pain.  Subsequent MRI testing of the spine revealed a small annular tear and single level lumbar disc bulge, degenerative disc disease of both the cervical and lumbar areas, with mild foraminal stenosis and disc desiccation.

Physical examination revealed muscle spasm, tenderness, diminished range of motion and an occasional positive straight leg raise on the lower left extremity. In August 2003, the plaintiff was hospitalized for problems stemming from a septic joint infection of the left knee.  By October 2003, the knee infection resolved without further complication. The claimant's primary subjective complaint is back and neck pain.

At the evidentiary hearing, the ALJ sought testimony from the claimant and a vocational expert.  Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

At step 1, the ALJ determined that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability.  At step 2, the ALJ determined that the claimant has "severe" impairments due to chronic pain of the back, neck and knee, and major depressive and generalized anxiety disorder. The ALJ determined that the claimant's breathing conditions and poor hearing were not "severe" impairments.

At step 3, the ALJ determined that, although the claimant has impairments that are "severe," he does not have an impairment or combination thereof that is listed in or equal to one listed

4

at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found that the claimant cannot perform his past relevant work.

At step 5, the ALJ found that the claimant has a residual functional capacity for light-level work. Specifically, the ALJ found:

> Upon careful consideration of the entire record, consistent with the assessment [of] Judge Davenport in the prior decision, and with the assessments of the state agency medical consultants, the undersigned finds that the claimant retains the physical residual functional capacity to perform light level work, which involves lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking up to 6 hours per day with intermittent sitting. . . . Further, as assessed by James Templin, M.D., examining consultative physician, the undersigned also finds that the claimant can frequently climb ramps and stairs but should only occasionally climb ladders/scaffolds/ropes; occasionally stoop, kneel, crouch, and crawl; limit operation of foot pedals/controls with his lower left extremity to an occasional basis; and avoid concentrated exposure to cold temperatures and vibrations . . . .
>
> Mentally, as assessed by the psychological medical consultants and consistent with the clinical evidence, the undersigned finds that the claimant is moderately limited in his ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and to respond appropriately to changes in the work setting; but retains the mental residual functional capacity to understand, remember, and carry out detailed instructions for two (2) hour segments; relate adequately in most settings; and tolerate changes and pressures of a routin[e] setting . . . .

(AR 28-29).

The vocational expert opined that given claimant's age, education, work history and the limitations assigned by the ALJ, that a significant number of jobs existed in the national economy that the claimant could perform, including office helper (6,500 jobs locally and 115,000 jobs nationally), mail clerk, (3,900

5

jobs locally and 78,000 jobs nationally), and at a sedentary level, receptionist, (5,550 jobs locally and 93,000 jobs nationally), and mail handler, (2,900 jobs locally and 59,000 jobs nationally). Based on this testimony, the ALJ found that the claimant was not disabled.

In this appeal, the claimant's sole argument is that, pursuant to 20 C.F.R. § 416.912, the ALJ was required to recontact Dr. Potter, his treating physician, "to determine whether additional information was readily available." The plaintiff argues that the following statement by the ALJ illustrates that the ALJ had a duty to recontact Dr. Potter:

> In worker's compensation progress assessment reports completed between August 2002 and October 2003, Ira Potter, M.D., former treating physician, found the claimant limited to lifting/carrying 10 to 25 pounds, standing/walking a total of 2 hours per day, sitting a total of 3 hours per day and performing postural type activities (Exhibit C-14F). However, in another section of these same notes, Dr. Potter indicates the claimant's condition has remained 'unchanged,' rendering him temporarily and totally disabled with 'no' ability for employment (Id.). Further contradictory is Dr. Potter's report dated November 21, 2002 wherein he states though the claimant continues to voice complaints of pain particularly with exertion, duragesic patch therapy was tried and proved to be at least somewhat effective (Id.). Additionally, Dr. Potter's clinical findings show diminished range of motion, diminished sensation, tenderness, and occasional muscle spasm, but of a slight to mild degree which is unsupportive of his restrictions above (Id.). Accordingly, as Dr. Potter's opinions are internally inconsistent with his own treatment notes and with the record as a whole, they can be neither adopted nor given great weight herein.

(AR 31).

The regulations outline when the Commissioner has a duty to recontact a treating physician. 20 C.F.R. 416.912(e) provides:

6

> (e) *Recontacting medical sources*. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . ..

20 C.F.R. Parts 400 to 499, § 416.912(e) (2006).

The Sixth Circuit has held that there is no requirement to recontact a treating physician where all the doctor's treatment notes are already in the record and were used by the ALJ to determine the claimant's level of impairment. Littlepage v. Chater, 134 F.3d 371, 1998 WL 24999 (6th Cir. 1998).

In Littlepage, the ALJ noted that the medical assessment form completed by the treating physician did not comport with the physician treating notes. Accordingly, the ALJ discounted the assessment and, instead, relied on the treatment notes. Id. at *3. The court found that there was no duty to recontact the physician because it appropriately discounted the assessment as being unsupported by the medical records, and properly relied on the treatment notes in making his RFC determination.

The claimant argues that the Sixth Circuit found no duty to recontact the physician in Littlepage because the ALJ utilized the treatment notes in determining the claimant's RFC. He then argues that becausethe ALJ in the case at bar discounted all Dr.

7

Potter's opinions, he was required to recontact him to clarify the ambiguity in the records.

It is not the ALJ's rejection of a treating physician's opinions that triggers the Commissioner's duty to recontact the physician.[1]  White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).  Instead, the duty is triggered only upon a finding that the information provided by the physician is inadequate.  Id.

White is directly on point.  There, the ALJ discounted the treating physician's assessment because it was inconsistent with the doctor's own objective findings and the findings of consulting physicians.  In addition, the treating physician did not resolve the differences between two inconsistent assessments.  The court found that the Commissioner is not required to recontact a physician anytime that it rejects an opinion.  Instead, the duty to recontact the physician is triggered when the ALJ receives inadequate evidence from the physician to make a disability determination.  Id. at 908.  The court concluded that because the ALJ believed the information he received from the treating physician was adequate for consideration, he was not obligated by the regulation to recontact the physician.

Similarly in the case at bar, the ALJ believed the information he received from Dr. Potter was adequate for

---

[1]The claimant is correct that it is not his burden to recontact the doctor to bring forth additional evidence when the record is inadequate.  However, the regulations impose a duty on the Commissioner only where the information the physician provides is inadequate to determine whether the claimant is disabled.  White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

8

consideration. The court notes that the record before the ALJ contained sixty-five pages of treatment related documents from Dr. Potter. The ALJ rejected Dr. Potter's opinions because they were internally inconsistent with his own treatment notes and with the record as a whole. This rejection did not trigger the requirement to recontact Dr. Potter under § 416.912(e).

Instead, the court must look at the adequacy of the medical records the ALJ recieved from Dr. Potter to determine if the duty to recontact is triggered. The evidence indicates that the ALJ had Dr. Potter's entire medical record, and that he found it sufficient to make a disability determination. The claimant does not argue, nor is there any other evidence, that any part of Dr. Potter's medical records was not included in the record before the ALJ. Thus, there is no evidence to suggest the ALJ recieved inadequate evidence as would require recontacting Dr. Potter.

The court finds that the ALJ was not required to recontact Dr. Potter. The ALJ's determination that the claimant can perform a range of light work is supported by the record. Specifically, the RFC assessments of three consulting physicians. (AR 297, 728, 772).

In addition, the ALJ's decision is supported by the vocational expert. The vocational expert opined that given the RFC limitations found by the ALJ, that there were a significant number of jobs that the claimant could perform. The vocational expert's testimony constitutes substantial evidence. Delgado v. Commissioner of Social Security, 30 Fed. Appx. 542, 2002 WL

9

343402 (6th Cir. 2002)(unpublished).  Id

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court finds that the ALJ's decision is supported by substantial evidence.  The court being sufficiently advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 7) be, and it hereby is, **denied** and the cross-motion for summary judgment of the defendant (Doc. 10) be, and it hereby is, **granted**.  That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 13th day of September, 2007.



**Signed By:**
*William O. Bertelsman*  WOB
**United States District Judge**